IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHASSIDY A. AYALA, an individual;<br><br>Plaintiff,<br><br>v.<br><br>PAYPAL, INC., a Delaware corporation;<br><br>Defendant. | **8:16CV57**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the defendant's motion for summary judgment, Filing No. 25.  This is an action for discrimination in employment brought pursuant to Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 *et seq.*  The plaintiff alleges she was subjected to a hostile work environment by reason of her disability.

I.    BACKGROUND

The following facts are gleaned, in part, from the parties' briefs and submissions and are not meaningfully disputed.  In October of 2006, PayPal hired Ayala as a Resolution Services Agent.  Her job duties included answering customer phone calls and solving problems customers had with their PayPal accounts.  Ayala was an at-will employee.  At all times relevant to this lawsuit, PayPal was a subsidiary of eBay Inc.

Ayala held various positions with PayPal until January of 2011 when she became a Dispute Resolution Specialist.  Ayala held the position of a Dispute Resolution Specialist until December 2014.  During her orientation and employment, Ayala received and reviewed PayPal's policies, including its Equal Employment Opportunity ("EEO") Policy and its Discrimination and Harassment-Free Workplace Policy.  Ayala also signed an Electronic Monitoring Acknowledgment Form, which informed her that

PayPal could monitor and record her computer usage at work. Ayala was also familiar with PayPal's Attendance Policy.

By January of 2012, Emily Heldridge ("Heldridge") was Ayala's supervisor during most of the time at issue, except for a period of time between March 2013 and September 2013, when Chris Smith ("Smith") temporarily managed Ayala's team while Heldridge assisted a different team. In late 2014, Heldridge transferred to a different position and Jenny Nelson became her supervisor.

In March or April of 2013, Ayala complained to Heldridge's supervisor, Sue Hogle, that she was being treated unfairly by Heldridge. In May of 2013, Ayala wrote a comment about Heldridge on an anonymous survey that all employees are asked to complete. Ayala indicated that Heldridge did not treat everyone fairly and had favorite employees. Ayala testified that George Ramirez, a former PayPal supervisor, later told her that the anonymous surveys are not anonymous.

Ayala received three disciplinary memos in November of 2013. She reported to Human Resources through PayPal's automated system, MyHR, that Heldridge had retaliated against her for the negative comments made in the May 2013 anonymous survey. Ayala complained to Human Resources that Heldridge commented about the slow speed at which Ayala read e-mails, stated that Ayala did not perform like a regular team member, and was generally rude. Ayala characterized Heldridge's comments and demeanor as condescending and demeaning. Ayala informed Human Resources "I am being retaliated against for comments I made on a survey."

The record shows Ayala has been medically diagnosed with anxiety, Attention Deficit Hyperactivity Disorder ("ADHD"), Post-traumatic Stress Disorder ("PTSD"), and

2

Depression.  Ayala testified that she informed Heldridge that she had ADHD in 2011 and notified PayPal's human resources department (the MyHR group) of her disability and its impact on her life in September 2014.

She stated in her deposition that she attributed Heldridge's conduct in connection with the November 2013 corrective actions to Ayala's ADHD disability, but there is no evidence that Ayala told either Heldridge or the human resources department that she thought the comments referred to her ADHD at the time of the 2013 incidents.  Shortly thereafter, in December 2013, Ayala requested leave for treatment for depression and anxiety.  She reported she needed the time off because she was going through a divorce, her daughter had attempted suicide and she had totaled her car.  She did not report that her supervisor's actions had caused her anxiety and depression.  After Ayala's twelve weeks of leave under the Family and Medical Leave Act ("FMLA") expired, PayPal granted Ayala an addition two-month leave of absence.

After she returned to work, Ayala was disciplined for violations of PayPal's attendance policy and for providing incorrect information to a customer.  Ayala acknowledges that she committed the infractions, but contends she was unjustifiably singled out for discipline.  She testified she was subjected to more reviews of her telephone conversations than other employees and, unlike other employees, was required to go through all of her old tickets and log her time.  Other than Ayala's testimony, there is no evidence that other employees were treated differently.

Ayala again complained to MyHR, without mentioning ADHD or any form of discrimination.  The record shows Ayala was advised to contact the company's short term disability insurer or employee assistance program if she had a health condition that

was affecting her ability to come to work and to perform the functions of her job. PayPal's records indicate that Ayala stated that an ideal resolution would be for Heldridge to "be nice" to Ayala.

In the Fall of 2014, Heldridge transferred to another position and Jenny Nelson became Ayala's supervisor. She was again counselled and disciplined for unexcused absences. The record shows Ayala had received nine written warnings in eighteen months from three different supervisors. PayPal produced evidence that, over the course of her employment, Ayala received numerous written warnings, conversation memos, corrective counselling memos, and disciplinary actions for such infractions as inappropriate email, improper cell phone use, low productivity, misappropriation of time (improper internet use), and attendance violations.

Ayala faced another corrective action due to absenteeism in December 2014. Ayala testified that her supervisor, Jenny Nelson, told her she would not be fired at that time and would be given another chance, but if she missed one more day, Ayala would be terminated. Ayala testified that at that point she told Nelson that she could not take it anymore and resigned from employment.

On September 22, 2014, Ayala filed a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging one charge—that she had been subjected to harassment and a hostile work environment on the basis of her disability or perceived disability. Although she had been diagnosed with Depression and PTSD, her complaint of discrimination was based only on ADHD.

II.     LAW

4

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013). Summary Judgment is not disfavored and is designed for every action. *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012). In reviewing a motion for summary judgment, the court will view "all evidence and mak[e] all reasonable inferences in the light most favorable to the nonmoving party." *Inechien v. Nichols Aluminum, LLC*, 728 F.3d 816, 819 (8th Cir. 2013). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)) (en banc). But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.; see Briscoe,* 690 F.3d at 1011 (stating that the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial).

Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should

proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011); *see Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (stating "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

Prior to filing a civil action alleging violations of the ADA or the ADEA, a plaintiff must exhaust her administrative remedies by submitting her discrimination claims in an EEOC charge and receiving a "right to sue" letter. *See, e.g.*, 42 U.S.C. § 12117(a) (stating that the remedies and procedures set forth in Title VII, including those pertaining to exhaustion, apply to persons alleging discrimination based on disability); 42 U.S.C. § 2000e–5 (stating that a person may bring a Title VII action in federal court after filing a charge of discrimination and receiving a right to sue notice); *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) ("Exhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court."). After a claimant receives a right to sue letter, he or she may file a complaint that includes claims of employment discrimination "as broad as the scope of the EEOC

investigation which reasonably could be expected to result from the administrative charge." *Parisi*, 400 F.3d at 585.

Hostile work environment claims of disability-based harassment are cognizable under the Americans with Disabilities Act (ADA). *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719 (8th Cir. 2003). To prevail on a hostile work environment claim based on disability, a plaintiff must show "(1) she is a member of the class of people protected by the statute, (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions or privileges of her employment." *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015).

"[T]he harassment standards are 'demanding.'" *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634 (8th Cir. 2016) (quoting *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006)). To be actionable, harassment must be both subjectively hostile or abusive to the victim and "severe and pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Shaver,* 350 F.3d at 721 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)); *see also Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 779 (8th Cir. 2012) (hostile work environment under ADA must be subjectively and objectively offensive and extreme in nature).

To survive summary judgment, a plaintiff must present evidence from which a reasonable jury could conclude that the harassment was sufficiently "severe or pervasive" to affect a term, condition, or privilege of the plaintiff's employment. *Kelleher*,

817 F.3d at 634. "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Id.* (quoting *Arraleh*, 461 F.3d at 979). Relevant factors for determining whether conduct rises to the level of harassment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011) (internal quotations and citations omitted). Infrequent offhand comments that allegedly indicate a disability bias are not sufficiently severe to constitute a hostile work environment. *Sellers,* 791 F.3d at 945; *see EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 687 (8th Cir. 2012) ("'[M]ore than a few isolated incidents are required' to support a hostile work-environment claim.") (quoting *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1128 (8th Cir. 2000)).

Anti-discrimination laws do not create codes of civility in the workplace the court does not sit as a "super-personnel" department to correct a supervisor's "rude, abrasive, unkind, or insensitive [conduct, which] does not come within the scope of the law." *Shaver*, 350 F.3d at 721 (finding verbal harassment including calling an employee with epilepsy "platehead" and "stupid" did not rise to the level of harassment warranting relief); s*ee, e.g., Murray v. Warren Pumps*, LLC, 821 F.3d 77, 87 (1st Cir. 2016) (finding that a supervisor's conduct—making stray "snide comments" when a putatively disabled employee was unable to perform certain tasks, and questioning of his need for time off for medical appointments—was not sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work environment); *Rios-Jimenez v.*

8

*Principi*, 520 F.3d 31, 43 (1st Cir. 2008) (isolated offhand remarks about an employee's alleged disability were insufficient to raise a triable issue of fact as to the employee's claim for hostile work environment under the Rehabilitation Act).

A hostile environment caused by a factor other than a prohibited criterion is not actionable. *See Yuknis v. First Student, Inc.*, 481 F.3d 552, 554 (7th Cir. 2007) (stating that if "the charge is the creation of a working environment hostile to women, the conduct must be the kind that makes the workplace uncomfortable for women, as distinct from making it uncomfortable for cat lovers, for people who are disgusted by coworkers who violate work rules by selling Avon products at work, for people offended by adultery, for gamblers, and for fastidious people, who abhor foul language"). "If the nature of an employee's environment, however unpleasant, is not due to [her disability, she] has not been the victim of . . . discrimination as a result of that environment.'" *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998); *see also Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 358 (8th Cir. 1997) (harassment must be based on protected class to be actionable); *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (assuming actions were abusive, "[the plaintiff] must 'prove that she was the target of harassment because of her sex and that the offensive behavior was not merely non-actionable, vulgar behavior.'") (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005)). "The point is elementary: the creation of a hostile working environment is actionable . . . only when the hostility is to a group (or specific members of a group)" whom the statute protects. *Yuknis,* 481 F.3d at 554; *see also Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (noting that several of the allegedly offensive comments were not related

9

to the protected status); *see Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 441 (1st Cir. 1997) ("Merely because a supervisor is overbearing or fellow employees unsociable and hard to get along with, does not suffice unless underlying motives of a sexual or gender discriminatory nature are implicated."); *Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 517 (7th Cir. 1996) (office gossip about intimate relationship with subordinate: "such rumors spread, irrespective of the truth, for any number of reasons having nothing to do with gender discrimination"); *Nair v. Nicholson*, 464 F.3d 766, 767 (7th Cir. 2006) (finding no indication that hostile behavior was connected to race or national origin).

III.    DISCUSSION

The court has reviewed the evidence and finds that the defendant's motion for summary judgment should be granted.  The plaintiff's only claim is for a hostile work environment based on her ADHD disability.  Ayala has presented evidence that she has a disability and thus is a member of the class of people protected by the statute, and that she was subject to some unwelcome treatment that could be characterized as harassment, but she has not shown that the conduct was severe or pervasive enough to affect the terms, conditions or privileges of her employment.  Nor has she presented evidence that the alleged harassment was due to her disability.

Even crediting Ayala's testimony that she believed Heldridge's comments about the speed of reading emails, poor performance, and "making things up" referred to Ayala's ADHD, the court doubts that Heldridge's conduct and statements created a hostile work environment "severe enough to affect the terms, conditions, or privileges" of Ayala's employment.  Ayala testified that Heldridge made several statements that

10

Ayala perceived were condescending or demeaning. Even if the statements were made in the context of the defendant having been singled out for disciplinary action, the court finds the statements simply do not rise to the level of conduct severe enough to be objectively perceived as creating an intolerable workplace. These comments do not rise above the level of the sort of "rude, abrasive, unkind, or insensitive" conduct that does not come within the scope of the law. The comments were relatively infrequent, were not particularly severe or offensive, and were not especially humiliating or demeaning. Heldridge's conduct in taking corrective action against Ayala for various breaches of company policy were justified in that Ayala admitted to the inappropriate conduct that sparked each disciplinary measure. The court finds the conduct does not rise to the level of harassment.

But even if it did, Ayala must show not only that the alleged harassment was severe and pervasive, but also that she was singled out because of her disability. The court finds an absence of proof of causation—that is, the plaintiff has not established the connection between the alleged hostile or harassing acts and her disability. Ayala has presented evidence that her supervisor's management style created difficulties for her, but there is no evidence that Heldridge's conduct was in any way connected to Ayala's disability. Although Ayala testified that she perceived Heldridge's comments on the speed of reading e-mails and poor performance related to her ADHD disability, the court finds no objective evidence that the statements would be so interpreted. The comments could as easily be interpreted as ordinary managerial criticisms unrelated to a disability. The court is unable to interpret the comments as anything more than offhand remarks.

11

The record supports Ayala's performance, disciplinary, and attendance shortcomings. She was counselled several times with respect to those issues and never sought any accommodation of her disability. Undisputed evidence establishes that Ayala's contacts with the human resources department in 2013 were based on alleged retaliation for Ayala's comments in the May 2013 survey. The court is unable to draw any inference that the 2013 incidents were connected in any way to Ayala's disability. Ayala's criticisms of Heldridge involved Heldridge's management style, personality, friendliness, and approachability, and were unrelated to any actual or perceived statements that relate to the ADHD disability.

The record shows Ayala was thereafter granted leave to obtain treatment for depression. Again, the record is devoid of any connection between the leave request, Heldridge's conduct, or Ayala's ADHD diagnosis. At the time she requested the leave, Ayala did not inform PayPal that any alleged harassment by Heldridge was the cause of her problem.

In 2014, Ayala admitted to policy violations and unexcused absences. She was disciplined for those infractions and accepted the findings of human resources investigations into the reasons for the discipline. She has presented evidence of some interpersonal conflict and a personality clash with Heldridge. Such evidence, however, does not translate to discrimination based on disability. Although Ayala referred to her ADHD diagnosis during the human resources investigative process, there is no evidence of any improper or illegal motive for the allegedly hostile or harassing conduct. The court is unable to draw any inference of disability discrimination from Heldridge's comments or actions. Ayala's subjective perception of discomfort, embarrassment, or

humiliation in response to her supervisor's legitimate performance critiques does not convert Heldridge's conduct to disability discrimination.  Ayala has shown that she thought Heldridge was unfriendly, unapproachable or rude, but has not shown Heldridge's conduct was fueled by a discriminatory animus.  In response to the defendant's motion, Ayala has not produced any evidence on which the jury could conceivably find in her favor.  Accordingly, the court finds the defendant has established that it is entitled to judgment as a matter of law.

IT IS ORDERED that:

1.      The defendant's motion for summary judgment (Filing No. 25) is granted.

2.      A judgment of dismissal will issue this date.

Dated this 8th day of June, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge